### SUSAN L. SLAYTON v. JOSHUA SLAYTON ET AL.

*Mortgage—Payment—Assignment.*

The question involved in this case is one of fact, namely, whether a quitclaim deed of mortgaged premises, executed by the mortgagor to a brother of the mortgagee, was made in consideration of an agreement between the mortgagor and mortgagee that the mortgage debt should be thereby paid and the mortgage discharged, or in consideration of the discharge of the mortgagor from personal liability for the mortgage debt. And, on a review of the testimony, the latter is found to have been the consideration, and the decree for the sale of the mortgaged premises is affirmed.

Appeal from Eaton. (Hooker, J.) Argued January 4, 1894. Decided February 12, 1894.

Bill to foreclose a mortgage. Defendant Henry H. Slayton appeals. Decree affirmed. The facts are stated in the opinion.

*H. F., F. A. & H. F. Pennington,* for complainant.

*I. H. Corbin* and *John M. Corbin,* for appellant.

GRANT, J. The bill of complaint is in the usual form

of the foreclosure of a mortgage, but, in addition to the usual allegations, complainant sets forth, as an excuse for not proceeding earlier, that the mortgagor, Wright, had abandoned the premises, and that she and her husband, defendant Joshua Slayton, had been for many years in possession, and had erected a new building ·thereon, at an expense of $1,600, of which she furnished about $534. Joshua Slayton, Joseph Slayton, Helen M. Burch, Charles Stevenson, and Monroe W. Wright were made parties defendant, as claiming to have rights and interests in the premises.

Joshua Slayton was the owner of the land, and on January 2, 1873, he conveyed it, by deed duly executed by himself and wife, to Monroe W. Wright, taking back a note and mortgage for the entire purchase price, $4,688.88, payable in four equal annual payments. Wright was married, and occupied the premises as a homestead. January 23, 1874, Wright executed a quitclaim deed of the land, in consideration of $1, to Joseph Slayton, a brother of Joshua. Wright's wife did not join in the deed, although her name was written in as one of the grantors. February 14, 1874, Joshua assigned the first payment to one J. H. Emmons, of Jackson, Mich. March 10, 1874, he assigned the last three payments to complainant. November 30, 1875, Emmons reassigned the first payment to Joshua. In November, 1888, Joshua and his wife separated. May 27, 1889, Joshua executed and recorded a discharge of the last three payments, and on the same day he commenced a foreclosure of the first payment, by advertisement, which was subsequently abandoned. In July, 1889, he assigned this first payment to defendant Helen M. Burch, his daughter. The present bill was filed December 22, 1890. Joseph Slayton died November 1, 1891. Upon suggestion of his death, his heirs, some of whom were minors, were admitted to defend. Defendant Henry H. Slayton,

the son of Joseph, was appointed guardian *ad litem.*
Henry appeared, answered, and filed a cross-bill, but filed
no answer in behalf of the infant defendants.    The case
was heard in open court, decree entered for complainant,
and defendant Henry alone appeals.

The sole defense is that the quitclaim deed from Wright
to Joseph Slayton was made pursuant to an agreement
between Wright and Joshua that the debt secured by the
mortgage was to be thereby paid, and the mortgage dis-
charged.    The complainant, on the contrary, insists that
she purchased in good faith, for a valuable and *bona fide*
consideration, and in ignorance of any arrangement between
her husband and Wright.    She further insists that the
agreement between Joshua and Wright was not as above
stated, but that Wright was to be discharged from personal
liability upon the note and mortgage; that the mortgage
should remain in force; and that Joshua should look only
to it and the land to secure the payment of his debt.

We think it clearly established by the evidence that
complainant was a *bona fide* purchaser for a valuable con-
sideration,—a large debt which her husband owed her,—
and without notice.

It is also established by a clear preponderance of evi-
dence that Joshua did not agree with Wright to consider
the debt paid and to discharge the mortgage, but only to
release him from liability thereon.    They lived in the same
village.    Wright did not ask for the surrender of the note
and mortgage, though he lived there for years afterwards.
Joshua treated it as valid and subsisting.    He shortly after
assigned it to other parties.    These assignments were
immediately recorded.    These acts were solemn assertions
of the existence of the mortgage.    Their record was notice
to all parties interested.    Joseph paid nothing for the deed
to him.    He had no knowledge of the transaction.    He
lived in the state of New York.    The quitclaim deed was

subject to the mortgage lien. The only evidence to sustain the alleged agreement is that of defendant Joshua. His acts are entirely inconsistent with his testimony. Wright had left the State, and his residence was known to Joshua. He obtained a continuance over one term to take his deposition, but took no further steps to secure it. If his testimony be true, he was guilty of a fraud in transferring a note and mortgage which he knew had no 'validity. His testimony is entirely unreliable, and unworthy of any credence. Joseph exercised no acts of ownership over the property, except as it was done through Joshua, who appears to have been the self-constituted agent of his brother. Joshua executed two leases in the name of his brother, but no authority to execute them is shown. Joseph received no rents or profits therefrom at any time. After Wright left the premises, complainant and her husband exercised the exclusive control over them. They rented the property, collected the rents, and paid the taxes. It is manifest that the defense is the creation of the defendant Joshua, devised for the sole purpose of defeating the rights of his wife, with whom he is now at enmity.

The decree of the court below was just, and is affirmed.

McGRATH, C. J., LONG and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.